Barbie D. Lieber (BDL 5891)
**Lieber & Lieber, LLP**
**60 East 42nd Street**
**Suite 2222**
**New York, NY 10165**
**Attorneys for Plaintiff**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re **Patricia A. O'Connor**, ) | Case No. | **15-12768 (SCC)** |
| Debtor ) | | |
| Patricia A. O'Connor ) | Chapter | **7** |
| Plaintiff ) | | |
| v. ) | Adv. Proc. No. | |
| Access Group Inc and Access Group Loan Servicing ) | | |
| Defendants ) | | |

**VERIFIED COMPLAINT TO DETERMINE PRIVATE STUDENT LOANS ARE DISCHARGEABLE**

Debtor, Patricia A. O'Connor, by her undersigned attorney, alleges as follows:

**Nature of the Action**

1. This is an adversary proceeding by which the Debtor seeks a declaration that (a) any educational student loan debt that exists constitutes an undue hardship for the Debtor and should be discharged pursuant to § 523(a) (8) of the Bankruptcy Code, or (b) and in the alternative, any part of any of the student loan debt (defined below as the "Private Loans") that was not for educational purposes and not an "educational loan" shall be discharged.

**Parties, Jurisdiction and Venue**

2. On October 13, 2015, the Debtor, Patricia O'Connor (the "Debtor" or Plaintiff") filed a voluntary petition in this Court for relief under chapter 7 of the Bankruptcy Code.

3. On October 13, 2015, David Kittay was appointed chapter 7 trustee.

4. Upon information and belief, defendant Access Group, Inc. ("Access" or "Defendant") is a corporation located at 10 North High Street, Suite 400 West Chester, PA 19380.

5. Upon information and belief, defendant Access Group Loan Servicing ("Access Servicing") is the loan servicer for Defendant Access and is located at PO Box 7450 Wilmington, Delaware19803-0450.

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

**Factual Allegations**

**A. The Private Student Loans and Federal Loans (which have been discharged by the US Department of Education)**

9. In or about March 2004, Defendant Access extended a private loan in the approximate amount of $15,000 for the Debtor to attend New York Law School.

10. In or about April 2005, Defendant Access extended a private loan in the approximate amount of $34,953 for the Debtor to attend New York Law School

11. In or about June 2005, Defendant Access extended a private loan in the approximate amount of $11,000 for the Debtor to attend New York Law School.

12. The foregoing loans and any other loans which may have been extended by Access are collectively (the "Private Loans")

**B. Brain Injury, Organic Mental Disorder, Nerve Damage and Cervical Spine Disorder, etc.  After Subway Fall Down Flight of Steps**

13. On January 18, 2006, the Debtor became permanently disabled.

14. The Debtor fell down a flight of stairs in a subway station in Manhattan, New York and struck her head on a concrete wall.

15. Prior to the accident, the Debtor had been a physical therapist for almost 20 years and had just completed law school.

16. By decision dated October 24, 2007 (the "Disability Decision"), Administrative Law Judge John J. Picket held that the Debtor was permanently disabled. A true copy of such decision, along with some of the referenced medical records, is attached as **Exhibit A**.

17. As noted in the Disability Decision, the Debtor "underwent MRI of the cervical spine which revealed straightening of the cervical lordosis, disc bulge…. and disc protrusions…The claimant reported persistent symptoms of headaches, dizziness, confusion and difficulty remembering. " **Exhibit A, at page 3.**

18. As noted in the Disability Decision, the Debtor "was referred to neurologist Jonathan Charney M.D. who initially saw her on January 25, 2006. The claimant reported that she was unable to work and was concerned about memory problems. She also described neck pain and dizziness. Dr. Charney advised EEG which revealed abnormalities consisting of localized sharp waive activity in the left temporal frontal parietal area." **Exhibit A, at 4.**

19. On January 25, 2006, Doctor Charney reported, based up on a Transcranial Doppler examination performed on the Debtor that the "right and left ophthalmic artery showed elevated velocity. The left anterior cerebral artery showed elevated velocity." (**A true copy of the Transcranial Doppler Examination dated January 25, 2006 is attached to the Disability Decision, Exhibit A.**)

20. On January 30, 2006, the Debtor had an MRI performed by Dr. Zelig Weinstein of Mount Sinai Radiology of the Debtor's cervical spine and it was reported to Dr. Charney hat the Debtor had a disk bulge and disk protrusions in her cervical spine. (**A true copy of the January 30, 2006 MRI report is attached to the Disability Decision, Exhibit A.**)

21. As noted in the Disability Decision, "the claimant reported to a subsequent treating neurologist, Lennart Belok M.D. that she experienced memory difficulty and cognitive functioning deficits to the extent that she had to stop work as a physical therapist because of difficulty with organizational skills and memory." **Exhibit A at 4.**

22. As noted in the Disability Decision, the Debtor "also had a second injury. In late September 2006, while lifting groceries, the claimant experienced the sudden onset of right shoulder pain and pain radiating down the right upper extremity to the right hand with numbness and paresthesia of the right arm and hand." EMG testing of the upper extremity revealed "right brachial plexopathy affecting the posterior cord, and left ulnar nerve entrapment at the elbow…" **Exhibit A at 4**.

23. Repeat cervical MRI performed on October 16, 2006 revealed "reverse lordosis at C3-C4", "levoscoliosis" at that level, and a "central disc herniation at c-3-4 with thecal sac indentation." **A copy of the October 16, 2006 Report is attached as to**

**Exhibit A; see also Judge Picket's findings and reference to such report at Exhibit A at 4**.

24. As noted in the Disability Decision, the Debtor underwent organicity evaluation by Elsa Morse Ph.D.

25. Dr. Morse advised that the claimant had "significant organic deficit" and assessed the claimant with "adjustment disorder with mixed anxiety and depressed mood" and "borderline intellectual functioning due to current organic problems." **A copy of Dr. Morse's Report is attached to Exhibit A; see also Judge Pickett's findings and reference to such report at Exhibit A at 5.**

26. As noted by Judge Picket, "in her statements to the Social Security Administration, the [Debtor]…. stated that she has daily headaches and neck pain…. is unable to lift or reach without excruciating pain in the right arm and tingling in the left hand [has] blurred vision and headaches a well a forgetfulness…forgetting where she is, or forgetting her destination when she is out, and stated that she often gets lost. She described difficulties reading or doing simple math [and] is irritable because of her condition and preferring to stay at home." **Exhibit A. at 5**.

C. **Judge Picket's Holding: "There Are No Jobs … That the Claimant Can Perform" And the Debtor is Permanently Disabled**

27. By the Disability Decision, Administrative Law Judge John J. Picket held that the Debtor was permanently disabled, finding and concluding, *inter alia*,

   "1. **The claimant has not engaged in substantial gainful activity since January 18, 2006, the alleged onset date….**

   2. **The claimant has the following severe impairments: "brain injury with Organic mental disorder, cervical spine disorder and right brachial plexopoathy…" Exhibit A at 3**

28. Judge Picket held that

   "The above impairments cause significant limitation in the claimant's ability to perform basic work functions."  **Exhibit A at 5**.

29. As found and concluded by Judge Picket:

   **"5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform unskilled sedentary work except: she is unable to maintain attention and concentration for prolonged periods; cannot reliability interact appropriately with others**

4

**on a sustained basis; and cannot tolerate the usual stresses associated with competitive employment**." **Exhibit A at 5**.

30. As found and concluded by Judge Picket:

   **"6. The claimant is unable to perform any past relevant work"**

31. In connection with his conclusion above, Judge Picket found

   "The claimant has past relevant work as a physical therapist. This occupation required standing and walking as well as lifting and carrying at levels precluded by the assessed limitations, as well as the ability to attend, concentrate and interact appropriately with others on a sustained basis. Accordingly, the claimant is unable to perform past relevant work." **Exhibit A** at 6.

32. As found and concluded by Judge Picket:

   "**9. The Claimant's acquired job skills do not transfer to other occupations within the residential function capacity…**" **Exhibit A at 6**

33. In connection with his conclusion above, Judge Picket found:

   "Despite the claimant's recent acquisition of what would be viewed as readily transferable skills from her law school training, the assessed limitations preclude all full time work." Id. At 7.

34. As found and concluded by Judge Picket:

   "10**. Considering the claimant's age, education, work experience and residual functional capacity, <u>there are no jobs that exist</u> in significant numbers in the national economy <u>that the claimant can perform.</u>**" **Exhibit A at 7 (Emphasis Added).**

35. In connection with, Judge Picket noted:

   "In this matter, the claimant is unable to maintain attention and concentration for prolonged periods cannot reliability interact appropriately with others on a sustained basis and cannot tolerate the usual stresses associated with competitive employment. These additional non-exertional impairments significantly erode the occupational base of sedentary work to the extent there are no jobs existing in significant numbers which she can performed. The claimant is disabled within the meaning of Social Security Act and Regulations." **Id at 7-8**

**D. The Debtor Continues to Be Disabled and Suffers from Traumatic Brain Injury, etc.**

36. As of the date hereof, the Debtor continues to experience the same problems she experienced in 2006, (a) difficulties processing information; concentrating; remembering things, understanding, including that when people speak to her and she tries to listen, it begins to sound like noise; (b) impaired decision making, processing, intellectual functioning and planning; attention, focus and concentration; (c) forgetfulness, including forgetting where she is, forgetting her destination when she is out and getting lost, "blanking out," "repeating herself;" disorientation and missing appointments; experiencing difficulties reading and doing simple math; irritability (d) daily headaches; (e) blurred vision (resulting from her eyes not working together) and eye pain and neck pain; (f) inability to lift or reach without pain in the right arm; (g) tingling in the left hand; and (h) anxiety and stress.

37. The Debtor continues to receive social security disability. She currently receives $2,013 per month as set forth in the attached letter from the Social Security Administration, attached as **Exhibit B.**

**E. Certification In 2015 that Debtor Suffers from Traumatic Brain Injury Which Prevents Her from Engaging In Substantial Gainful Activity in Any Field of Work**

38. On April 30, 2015, Lennart C. Belok, M.D.P.C., the Debtor's neurologist since 2006, certified in connection with the application to discharge federal student loans that:

    1. The Debtor is unable to engage in any "substantial gainful activity in any field of work" by reason of a medically determinable physical or mental impairment that (1) can be expected to result in death; (2) has lasted for a continuous period of not less than 60 months or (3) can be expected to last for a continuous period of not less than 60 months.

    2. The disabling condition is "Traumatic Brain Injury; " and

    3. The Debtor is "slow functioning" and has physical and social limitations

39. On May 27, 2015, Doctor Belok supplemented the above certification, reflecting that the Debtor has "Traumatic Brain Injury" and described the disabling condition as having "significant impairments, including cognitive deficits, impaired processing of information, impaired memory and decision making, headaches, dizziness, anxiety and depression." A copy of Doctor Belok's April and May 2015 certifications are attached as **Exhibit C.**

6

### F. US Department of Education Has Discharged The Debtor's Federal Loans Due to "Total and Permanent Disability"

40. The Debtor also took out Federal Student Loans and owed the Federal Government the amounts of $48,217 and $35,531 in connection with her matriculation in law school.

41. By decision dated September 10, 2015, the U.S. Department of Education completed its review of the Debtor's total and permanent disability discharge application and approved her application "on the basis of your total and permanent disability." **Attached hereto as Exhibit D is a copy of such decision.**

### Claims for Relief

*I. Declaration That the Full Private Loans Should Be Discharged Pursuant to § 523(A) (8)*

42. The Debtor repeats and realleges the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. The Debtor will suffer undue hardship if the Court finds that she must repay her enormous Private Loan debt. The Debtor is unable to pay them now in the future based upon her permanent disability.

44. In accordance with the Second Circuit decision of <u>Brunner v. New York State Higher Education Service Corp</u>, undue hardship is determined by a three part showing: (1) that the debtor cannot maintain, based on current income, a minimal standard of living for themselves and their dependents if forced to repay the loans; (2) Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) the debtor has made good faith efforts to repay the loans

1. **<u>Inability to Maintain "Minimal Standard of Living… if Forced to Repay Loans"</u>**

45. The Debtor receives $2,013 per month from Social Security Disability

46. The $2,013 in Social Security Disability does not cover the Debtor's expenses, with the rent alone being $1,438.50, utilities being $198, health insurance $192, life insurance of $23 and transportation of $116, totaling $1,951. This does not include food, laundry, clothing, entertainment, dental work and uncovered medical and personal care products.

47. Accordingly, the Debtor pushes herself as much as she can to try to earn additional income. However, given her cognitive and physical limitations, she is only able to work as a physical therapist 1 to 2 hours a week. She is able to do this because this client does not need extensive therapy, but rather minimal, non-exerting treatment.

48. Trying to work more than 2 hours a week, such as 3 to 4 hours a week, is very stressful on her both cognitively and physically and sets her back. Among other things, she experiences, "headaches, impaired decision making, processing, intellectual functioning and planning, attention, focus and concentration (everything starts to sound like noise); forgetfulness; tingling in the left hand, ache in her neck and numbness, pain and tingling in right arm; and blurred vision and eye pain.

49. In the 6 months prior to the bankruptcy (from April to September 2015), the Debtor averaged net income of $471 per month as a physical therapist.

50. In October 2015, the Debtor earned $300 for the month as physical therapist.

51. In November 2015, the Debtor earned $420 for the month as a physical therapist.

52. Schedule I of the Bankruptcy Petition reflects $2,013 in social security and $471 in the physical therapy income, for a total of $2,484 per month.

53. Schedule J of the Debtor's Schedules reflects that her expenses are $3,302.50, of which $1,438.50 is for rent.

54. Schedule J reflects that the Debtor's expenses are $818.50 greater than her monthly income. Attached as **Exhibit "E"** is the Debtor's Schedule I and J.

55. Plaintiff has been doing as much as she can to reduce her expenses, including reducing her food substantially, given her meager income.

56. Even with the Debtor's efforts to reduce her expenses, such as for food, her income is still insufficient to cover daily living expenses.

57. The Debtor's only meaningful asset is her IRA in Fidelity which as of the filing date was approximately $38,000, but has been reduced given the stock market decline. She needs this asset given that she is only 59 years old; she is disabled and has a shortfall in her income.

58. The Debtor cannot maintain, based on her current income, a minimal standard of living, let along if she were forced to repay the Private Loans.

59. As such and for the reasons stated above, the Debtor satisfies the first prong of Brunner

2. **Additional Circumstances Exist Indicating Persistence of Affairs**

60. The Debtor suffered brain injury in January of 2006, almost 10 years ago. She continues to have brain injury, together with other physical and psychological problems resulting from the accident.

61. The Debtor recently underwent Diffusion-tensor imaging testing and an MRI of the brain in October 24, 2014, which revealed continuing damage to the Debtor's brain. A copy of those medical tests is attached as **Exhibit "F.**

62. On May 27, 2015, Lennart C. Belok, M.D.P.C., the Debtor's neurologist since 2006, certified that the Debtor currently has "Traumatic Brain Injury" and described the disabling condition as having "significant impairments, including cognitive deficits, impaired processing of information, impaired memory and decision making, headaches, dizziness, anxiety and depression." **See Exhibit C**.

63. On April 30, 2015, Dr. Belok certified in connection with the application to discharge federal student loans that the Debtor given the Debtor's "Traumatic Brain Injury," she is unable to engage in any "substantial gainful activity in any field of work" by reason of a medically determinable physical or mental impairment that …. has lasted for a continuous period of not less than 60 months….. See **Exhibit C**.

64. Neurologist Lennart Belok, Administrative Law Judge Picket, the Social Security Administration and United States Department of Education have determined that the Debtor is permanently disabled and notably as set forth in the Disability Decision, Judge Picket held that "there are no jobs that exist in significant numbers in the national economy that the claimant can perform." **Exhibit A at 7**.

65. As such and for the reasons stated above, the Debtor satisfies the second prong of Brunner.

3. **The Debtor's "Good Faith Efforts to Repay" The Private Loan**

66. Despite her condition, the Debtor tried to make payments on the Private Loans as long as she could.

67. The Debtor made every effort to keep current with the loan payments, but then became delinquent in or about March 2011.

68. The Debtor then paid $811 to Defendant and/ or its agents including "the Student Loan People, "NCO, " Kentucky Higher Education Student Loan Corporation, and/or "KHESLC" in March 2011 to cure all defaults.

69. Thereafter, the Debtor made payments ranging from $476 to $506 from April 2011 through July 2011.

9

70. Thereafter the Debtor made a payment to the Defendant's debt collector, NCO in June 2012 of $500 and, upon information and belief, additional payments through or in December 2012.

71. The Debtor did and does not have the financial wherewithal to continue to make payments.

72. As such, and for the reasons stated above, the Debtor satisfies the third prong of Brunner.

73. If the Court determines that all or a portion of Private Loans to Debtor constitutes an "educational loan" under § 523(a) (8) of the Bankruptcy Code, the repayment of such student loan by the Debtor would be an undue hardship to the Debtor.

74. As a result, Defendant's loan to Debtor should be dischargeable pursuant to Bankruptcy Code § 523(a) (8).


*II. Declaration That the Private Loans are Not An Educational Loans Should be Discharged and that In Any Event the Full Private Loans Should Be Discharged Pursuant to Section 523(A)(8)*

75. The Debtor repeats and realleges the allegations contained in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76. Upon information and belief, the Private Loans aggregated to $60,953.

77. Upon information and belief, tuition at New York law school during the four (4) years of the Debtor's attendance at night amounted to approximately $20,000 per year or a total of approximately $80,000.

78. The Debtor took out federal student loans with the US Department of Education totaling approximately $83,748 to cover tuition and costs at New York Law School.

79. As set forth below, the federal student loans have been discharged by the US Department of Education based upon the Debtor's total and permanent disability.

80. The Debtor took out the Private Loans to cover in part living expenses while attending school and studying for the bar exam.

81. The Debtor needed to use all or a portion of the Private Loans for living expenses since her husband (from whom she has been separated since 2010 and whom does not provide her with any income) lost his job 2004.

10

82. The portion of the Private Loans that was used for the Debtor's living expenses and not education should be discharged.

WHEREFORE, the Debtor demands judgment: (i) the Private Loans are dischargeable pursuant to Bankruptcy Code § 523(a) (8) or in the alternative, (ii) declaring that all or a portion of Access's Private Loans to Debtor are not an "educational loans" and, therefore, should be discharged pursuant to Bankruptcy Code § 727; and (iii) for such other and further relief as the Court may deem just and proper.

Date:   December 20, 2015

/s/ *Barbie D. Lieber* (BDL 5891)
Lieber & Lieber, LLP
60 East 42nd Street
Suite 2222
New York, NY 10165
**Attorneys for Plaintiff**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re **Patricia A. O'Connor**, Debtor | ) | Case No. **15-12768 (SCC)** |
|---|---|---|
| Patricia A. O'Connor, Plaintiff | ) ) ) ) | Chapter **7** |
| v. | ) | Adv. Proc. No. |
| Access Group Inc and Access Group Loan Servicing, Defendants | ) ) | |

11

## VERIFICATION

Patricia A. O'Connor, being duly sworn, deposes and says:

I am the defendant. I have read the foregoing answer and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

/s/ *Patricia A. O'Connor*

Patricia A. O'Connor

Sworn to before me this

20th_day of December, 2016

__/s/ Barbie D. Lieber_____
Notably Public